IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CATHY T. DIPAULO,                    )
                                     )
        Plaintiff,                   )
                                     )
        v.                           )    Civil Action No. 1:07cv260
                                     )
JOHN POTTER, Postmaster General,     )
United States Postal Service,        )
                                     )
        Defendant.                   )

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge

        Plaintiff Cathy T. DiPaulo ("DiPaulo") sues John Potter in his
representative capacity as Postmaster General of the United States
Postal Service ("USPS") alleging gender discrimination under Title
VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16 (2006),
and mental disability discrimination under the Rehabilitation Act
of 1973, 29 U.S.C. §§ 791, 794(a) (2006).  She also seeks review of
the Merit Systems Protection Board's ("MSPB") Final Order pursuant
to 5 U.S.C. § 7703 (2006).  USPS moves to dismiss for lack of
subject-matter jurisdiction, insufficiency of service of process,
and failure to state a claim, pursuant to Rules 12(b)(1), (5) and
(6), Fed. R. Civ. P., respectively.  (Doc. 7.)  For the reasons
stated below, the action will be dismissed, without prejudice.

**I.    FACTS**

        From September 1994 to September 2004, DiPaulo was a rural
letter carrier employed by the USPS in its Hillsborough, North
Carolina office.  (Doc. 6 ¶¶ 4, 10.)  During the course of her

employment she began to suffer the effects of anxiety and depression. (Id. ¶ 6.) In August 2004, DiPaulo's supervisors added mailboxes to her delivery route and, she contends, failed to properly credit her for the additional workload which resulted in a reduction of her wages. (Id. ¶¶ 14-16.) DiPaulo alleges these additions "were imposed for discriminatory reasons based on her impairments and disability related conditions, and had the purpose and effect of creating a hostile and abusive work environment which caused the plaintiff to resign from her job due to the intolerable working conditions." (Id. ¶ 16.) DiPaulo resigned from her position on September 15, 2004. (Doc. 15 at 1.) On September 30, 2004, DiPaulo was medically diagnosed with the "mental impairments of anxiety and depression," which she alleges resulted from her work conditions. (Doc. 6 ¶ 6; Doc. 15 Ex. A.)

On January 24, 2005, DiPaulo timely filed a Complaint with the USPS's Equal Employment Office ("EEO") alleging gender and disability discrimination. (Doc. 8 Ex. A-2.) The EEO issued its Investigative Report on April 19, 2006. (Id.) Within 30 days of receiving the investigative file, DiPaulo had the option of requesting either an immediate final decision from the USPS EEO or a hearing and decision from the Equal Employment Opportunity Commission ("EEOC"). See 29 C.F.R. § 1614.108(f) (2007); (Doc. 8 Ex. A-2.) On May 5, 2006, she requested a hearing with the EEOC. (Doc. 8 Ex. A-2.) On June 19, 2006, the EEOC denied DiPaulo's

request for a hearing on the grounds that her complaint alleged constructive discharge, which the EEOC concluded rendered it a "mixed case" that should be appealed to the MSPB. (Id.) The EEOC returned DiPaulo's compaint to the USPS EEO for a final agency decision. (Id.)

The EEO issued its Final Agency Decision on August 10, 2006. Applying the burden-shifting analysis of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973), the EEO concluded that DiPaulo failed to demonstrate Title VII gender discrimination and failed to establish she was a person with a disability within the meaning of the Rehabilitation Act. (Doc. 8 Ex. A-2 at 4-5.) The EEO went on to explain that even if she had made a prima facie showing of discrimination based on a physical disability, the USPS articulated a legitimate, non-discriminatory reason for its actions. (Id.) The EEO concluded DiPaulo suffered no discrimination on the basis of her gender or disability. (<u>Id.</u> Ex. A-2 at 10.)

DiPaulo appealed the EEO Final Agency Decision to the MSPB, in accordance with the EEOC's earlier pronouncement. (Id.); see 5 C.F.R. §§ 1201.3, 1201.111 (2007). The MSPB Administrative Law Judge ("ALJ") issued an Initial Decision, finding that DiPaulo failed to establish that the MSPB had jurisdiction over her case, namely because she failed to show that she was a preference

eligible employee[1] or a manager, supervisor or personnelist doing other than non-confidential clerical work. Thus, the ALJ concluded that DiPaulo was not entitled to appeal her case to the MSPB. (Doc. 8 Ex. A-3.) The MSPB denied DiPaulo's petition for review of its Initial Decision and affirmed in a Final Order on February 27, 2007. (Id.); see 5 C.F.R. § 1201.113(c).

DiPaulo filed this lawsuit on April 3, 2007. (Doc. 1.) In her Amended Complaint, DiPaulo seeks two primary forms of relief: judicial review of the MSPB Final Order finding no jurisdiction over her claims; and a determination of her discrimination claims by jury. Before consideration of these issues, the court must address USPS's motion to dismiss on the grounds of untimely service of process.

## II. ANALYSIS

### A. Insufficiency of Service of Process

DiPaulo filed her Complaint on April 3, 2007,[2] had Summons issued on April 25, 2007, and served the Complaint and Summons upon USPS on August 7, 2007, one hundred and twenty-six days from the filing the Complaint and one hundred and four days from the

---

[1] A "preference eligible" employee is a veteran of the United States armed forces or certain relatives of a veteran. 5 U.S.C. § 2108(3) (2006).

[2] DiPaulo filed an Amended Complaint on September 19, 2007, after serving USPS. (Doc. 6.)

4

issuance of the Summons.[3]  USPS moves for dismissal under Rule 12(b)(5), Fed. R. Civ. P., because DiPaulo failed to serve the Complaint and Summons upon the Postmaster General within 120 days after the action was filed in compliance with Rule 4(m), Fed. R. Civ. P., and argues that good cause for such delay is required and cannot be shown.  DiPaulo counters with an affidavit of her counsel which declares that he mistakenly thought the Complaint was filed when the Summons was issued, which would have made service timely.  Counsel further states that, motivated by his concern for "the emotional health of the plaintiff," he purposefully delayed service to permit DiPaulo to better cope with the anxiety she was experiencing at the time.  (Doc. 15 Ex. 1 ¶ 8.)  These reasons, it is argued, provide good cause to excuse the failure to serve timely.

Prior to 1993, the requirements of Rule 4(m) were found in Rule 4(j), which required dismissal if service was not made within 120 days of the filing of the action, absent a showing of good cause.  Shao v. Link Cargo (Taiwan) Ltd., 986 F.2d 700, 708 (4th Cir. 1993); Motsinger v. Flynt, 119 F.R.D. 373, 375 (M.D.N.C. 1988).  In 1993, Rule 4(j) was edited and redesignated as Rule 4(m), which currently provides:

> If a defendant is not served within 120 days after the
> complaint is filed, the court – on motion or on its own

---

[3]  DiPaulo also subsequently served the U.S. Attorney General and local U.S. Attorney.  (Doc. 5.)

> after notice to the plaintiff – must dismiss the action
> without prejudice against that defendant or order that
> service be made within a specified time. But if the
> plaintiff shows good cause for the failure, the court
> must extend the time for service for an appropriate
> period . . . .

The Advisory Committee Notes to the Rule 4(m) amendments state unambiguously, as seems apparent from the text of the rule, that the court must "allow additional time if there is good cause for the plaintiff's failure to effect service in the prescribed 120 days, and [the rule] authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision *even if there is no good cause shown*." Fed. R. Civ. P. 4 advisory committee's note (emphasis added).

Confusion on the application of Rule 4(m) seems to have resulted in some quarters from the Fourth Circuit's 1995 opinion in <u>Mendez v. Elliot</u>, 45 F.3d 75, 80 (4th Cir. 1995), where, in affirming dismissal of the action, the court held that Rule 4(m) still requires a showing of good cause to avoid dismissal for failure to serve process within 120 days. This holding was articulated without reference to the 1993 Advisory Committee's Notes to Rule 4(m). To complicate matters, one year later the Supreme Court stated in dicta that under Rule 4(m) district courts have "discretion to enlarge the 120-day period for service, even if there is no good cause shown." <u>Henderson v. United States</u>, 517 U.S. 654, 662 (1996) (quoting 1993 Advisory Committee's Notes on Fed. R. Civ. P. 4). Shortly after that, the Fourth Circuit, in an

6

unpublished opinion, wrote that the Supreme Court's statement in _Henderson_ was "persuasive," questioned the continuing validity of _Mendez_, but declined to overrule its decision based solely on dicta.  See _Scruggs v. Spartanburg Reg'l Med. Ctr._, No. 98-2364, 1999 WL 957698, at *2 (4th Cir. Oct. 19, 1999).

_Mendez_ has understandably come under question in light of _Henderson_.  Yet USPS's argument is consistent with several courts that have read _Mendez_, absent reversal by the Fourth Circuit,[4] to continue to require a showing of good cause to overcome a default in timely service.  See, _e.g._, _Patterson v. Brown_, No. 3:06cv476, 2008 WL 219965, *13-14 (W.D.N.C. Jan. 24, 2008) (listing Fourth Circuit cases calling _Mendez_ into question, but concluding that controlling Fourth Circuit precedent requires showing of good cause);  _Hoffman v. Baltimore Police Dep't_, 379 F. Supp. 2d 778, 786 (D. Md. 2005) (same); _U.S. ex rel. Shaw Envtl. v. Gulf Ins. Co._, 225 F.R.D. 526, 527 (E.D. Va. 2005) (same); _Terry v. Marshall_, No. 1:03CV00741, 2004 WL 1348219, at *1 (M.D.N.C. June 7, 2004) (same); _Wright v. Durham County Jail and Staff (Med., Etc.)_, No. 1:00CV922, 2002 WL 737730, at *2 (M.D.N.C. Mar. 4, 2002) (same); _Melton v. Tyco Valves & Controls, Inc._, 211 F.R.D. 288, 290 (D. Md. 2002) (same and questioning the "continued vitality of _Mendez_"); _Johnson v. United Steel Workers of Am._, 172 F.R.D. 185, 187-88 n.6

---

    4  See _Smith v. Moore_, 137 F.3d 808, 821 (4th Cir. 1998) (holding Fourth Circuit precedent is binding until overruled by the United States Supreme Court or an en banc opinion of the Fourth Circuit).

(W.D. Va. 1997) (noting <u>Mendez</u> required a showing of good cause for a Rule 4(m) extension).  <u>But</u> <u>see</u> <u>Giacomo-Tano v. Levine</u>, No. 98-2060, 1999 WL 976481, at *2 (4th Cir. Oct. 27, 1999) (holding district court may grant an extension of time for service without showing of good cause); <u>Yongo v. Nationwide Affinity Ins. Co. of Am.</u>, No. 5:07cv94d, 2008 WL 516744, at *8 (E.D.N.C. Feb. 25, 2008) (holding court retains discretion to extend time for service even in the absence of good cause); <u>Lane v. Lucent Techs. Inc.</u>, 388 F. Supp. 2d 590, 596-97 (M.D.N.C. 2005) (declining to follow <u>Mendez</u>, granting discretion to serve defendant outside of 120-day period without showing of good cause).

 <u>Mendez</u> should not have caused such confusion.  As with many things, the devil here is in the details.  A careful reading of <u>Mendez</u> reveals that it was governed by the prior version of the rule, Rule 4(j), which clearly required a showing of good cause.[5] The service issues there arose in August and October 1993, well before the December 1, 1993, effective date of the 1993 amendment to Rule 4(m) at issue in the present case.  <u>Mendez</u>, 45 F.3d at 77. The <u>Mendez</u> court noted that its reference to Rule 4(j) as the

---

[5]   Rule 4(j), effective at the time of <u>Mendez</u>, provided:

If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion . . . .

redesignated "Rule 4(m)" was for "convenience" only. <u>Id.</u> at 77 n.1. The Fourth Circuit's holding in <u>Mendez</u> applies to pre-amendment Rule 4(j), therefore, and does not apply to the applicable rule in this case, the amended Rule 4(m).[6] <u>Cane Creek Cycling Components, Inc. v. Tien Hsin Ind. Co.</u>, No. 1:07cv133, 2007 WL 3028321, at *7 (W.D.N.C. Oct. 15, 2007) (noting that a "[c]lose reading of <u>Mendez</u> reveals that the appellate court therein addressed the version of Rule 4(m) that predated the 1993 amendments" and that "<u>Mendez</u> is simply not good law when courts interpret the good cause requirements, or lack thereof, in cases applying Rule 4(m) post amendment").

Rule 4(m) now gives district courts discretion to grant extensions of time for service of process without a showing of good cause but requires them to grant extensions upon a showing of good cause.[7] <u>See</u>, <u>e.g.</u>, <u>United States v. McLaughlin</u>, 470 F.3d 698, 700 (7th Cir. 2006) ("if good cause for the delay is shown, the court must extend the time for service, while if good cause is not shown,

_____

[6] The Fourth Circuit's interpretation was premised on its statement that "'Rule 4(j) was edited without a change in substance and renumbered as Rule 4(m).'" <u>Hammad v. Tate Access Floors, Inc.</u>, 31 F. Supp. 2d 524, 527 (D. Md. 1999) (quoting Mendez v. Elliot, 45 F.3d 75, 78 (4th Cir. 1995)). As noted <u>supra</u>, this was not the case because the new Rule 4(m) removed the "good cause" requirement.

[7] The court retains discretion over the length of time of such extension. Fed. R. Civ. P. 4(m) ("But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period"); <u>see</u> <u>Zapata v. City of New York</u>, 502 F.3d 192, 197 (2d Cir. 2007) (questioning whether the extension of time for good cause should be characterized as "mandatory" if the court has authority to determine existence of good cause and length of any extension).

9

the court has a choice between dismissing the suit and giving the plaintiff more time"); Lindsey v. U.S. R.R. Ret. Bd., 101 F.3d 444, 446 (5th Cir. 1996) (holding dismissal is improper if plaintiff shows good cause for why service is not made within 120 days of the filing of the complaint).

Here, the delay, though explained in terms of counsel's concern for DiPaulo's well-being, was occasioned by absolutely no effort at service but rather by intentional suspension of activity. On this record, the court concludes that good cause has not been demonstrated and an extension is therefore not required under Rule 4(m). However, the court is reluctant to visit counsel's oversight on his client under the facts of this case, particularly since granting the extension will not be outcome-determinative and, as will be seen, DiPaulo's hopelessly conflicting treatment and probable misdirection during the administrative process entitles her, in the court's view, to an explanation of the relief to which she is entitled. Rule 4(m) was amended to grant district courts more discretion, and the court will treat DiPaulo's counsel's affidavit and brief as an application for a limited 6-day extension and grant it. See Bonds v. Electrolux Home Prods., Inc., No. 8:06-1650-GRA-BHH, 2006 U.S. Dist. LEXIS 88392, at *13 (D.S.C. Dec. 6, 2006). Thus, USPS's motion to dismiss for insufficiency of service of process is DENIED. Fed. R. Civ. P. 12(b)(5).

10

**B. Judicial Review of MSPB Final Order**

USPS moves to dismiss DiPaulo's appeal seeking review of the MSPB's Final Order on the grounds that this court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). USPS argues that the United States Court of Appeals for the Federal Circuit has exclusive jurisdiction over any review of the MSPB's Final Order. DiPaulo counters that this court has jurisdiction to review the MSPB's Final Order under 5 U.S.C. §§ 7702 and 7703. (Doc. 6 ¶ 1.)

A Rule 12(b)(1) motion to dismiss should be granted if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). DiPaulo bears the burden of proving that this court has subject-matter jurisdiction over her claim. Id. However, if a defendant challenges subject-matter jurisdiction, the court is instructed to "'regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" Id. (quoting Richmond, Federicksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991)). Thus, because USPS challenges this court's subject-matter jurisdiction, the court can consider the decisions from DiPaulo's administrative proceedings, which are verified and attached as exhibits to USPS's Motion to Dismiss, without converting the motion into one for summary judgment. (Doc. 8.)

11

This case draws into focus the distinctions between the administrative and judicial appeal rights of different categories of federal employees alleging discrimination. Under the statutory scheme, federal employees alleging discrimination generally bring their action before their agency EEO, and then either appeal the EEO's final agency decision to the EEOC or proceed directly to federal district court. See 42 U.S.C. § 2000e-16(c); 29 U.S.C. § 794a(a)(1); 29 C.F.R. §§ 1614.401-407. Congress created the MSPB to provide an alternative administrative path for a defined subset of federal employees to appeal specific types of adverse personnel actions. 5 U.S.C. §§ 7511-12. Eligible employees may seek MSPB review of their discrimination claims if the discrimination is the alleged basis of a qualifying adverse personnel action.[8] Id. § 7702(a)(1).

Federal courts have jurisdiction to review MSPB decisions. Id. § 7703(a)(1) ("Any employee . . . affected or aggrieved by a final order or decision of the Merit Systems Protection Board may obtain judicial review of the order or decision.") Under the Federal Courts Improvement Act of 1982, codified at 28 U.S.C. § 1295(a)(9), the Federal Circuit has exclusive jurisdiction over appeals of MSPB decisions in personnel matters. This statutory scheme fulfills one "indisputable Congressional objective" that

_____

[8]     If the MSPB decides both the adverse action and the discrimination claim, 5 U.S.C. § 7702(a)(2), the federal employee can then petition the EEOC for review of the MSPB decision, id. § 7702(b)(1), or file an action in federal district court, id. § 7703(b)(2).

12

"the Federal Circuit should be the uniform voice in federal personnel matters." Afifi v. U.S. Dep't of the Interior, 924 F.2d 61, 64 (4th Cir. 1991).

A competing congressional objective is for federal district courts throughout the country to hear all claims arising under the nation's anti-discrimination laws. Id. An exception to Federal Circuit jurisdiction therefore exists for appeals to the MSPB that involve discrimination claims in addition to a qualifying adverse personnel action. 5 U.S.C. § 7702(a)(1). These "mixed-case appeals"[9] to the MSPB are reviewable by district courts. Id. § 7703(b)(2). To be eligible for district court review, a case must be a valid mixed-case appeal to the MSPB, which means it must fulfill two requirements. Id. § 7702(a)(1). First, the employee must be affected by a personnel action capable of being appealed to the MSPB.[10] Id. § 7702(a)(1)(A). Second, the employee must allege conduct prohibited under certain enumerated federal anti-discrimination statutes.[11] Id. § 7702(a)(1)(B); see Powell v. Dep't

_____

[9]   An appeal filed with the MSPB is a "mixed-case appeal" if it "alleges that an appealable agency action was effected, in whole or in part, because of discrimination on the basis of race, color, religion, sex, national origin, handicap or age." 29 C.F.R. § 1614.302.

[10]   Appealable agency actions include removal, suspension for more than 14 days, reduction in grade, a reduction in pay and a furlough of 30 days or less. 5 U.S.C. § 7512.

[11]   These include section 717 of the Civil Rights Act of 1964, section 6(d) of the Fair Labor Standards Act of 1938, section 501 of the Rehabilitation Act of 1973 and sections 12 and 15 of the Age Discrimination in Employment Act of 1967. 5 U.S.C. § 7702(a)(1)(B).

<u>of Def.</u>, 158 F.3d 597, 598 (D.C. Cir. 1998). By definition, a case cannot be a mixed-case appeal if the MSPB determines that it lacks jurisdiction over the case. <u>Nater v. Riley</u>, 114 F. Supp. 2d 17, 25 (D.P.R. 2000).

DiPaulo contends she is eligible to seek judicial review of the MSPB's February 27, 2007, Final Order in this court pursuant to 5 U.S.C. §§ 7702 and 7703. Her argument is flawed because the MSPB determined it lacked jurisdiction over her case because she failed to demonstrate that she was a preference eligible employee permitted to appeal the USPS EEO's Final Agency Decision to it. (Doc. 8 Ex. A-3); <u>see</u> 5 U.S.C. § 7511(a)(1)(B)(ii); 39 U.S.C. § 1005(a)(4)(A)(i). The MSPB's dismissal for lack of jurisdiction precludes her case from qualifying as a mixed-case appeal over which this court may exercise jurisdiction. 5 U.S.C. §§ 7702(a)(1), 7703(b)(2).

Neither party has cited, nor has the court found, Fourth Circuit precedent authorizing this court to exercise jurisdiction over an MSPB dismissal for lack of jurisdiction. However, the Federal Circuit has articulated the need for uniform interpretation of cases involving the bounds of the MSPB's jurisdiction. In <u>Ballentine v. Merit Systems Protection Board</u>, 738 F.2d 1244, 1247 (Fed. Cir. 1984), the petitioner was demoted by the U.S. Marshals Service and appealed the Department of Justice's action to the MSPB as a mixed case. The MSPB held it lacked jurisdiction — because

14

petitioner had not exhausted his administrative remedies — and dismissed the appeal, thus never reaching the merits of the discrimination claim. Ballentine, 738 F.2d at 1245. On appeal to the Federal Circuit, the MSPB sought to transfer the case to the district court because of the presence of the discrimination claim. Id. The Federal Circuit denied transfer, holding that it had jurisdiction over the appeal under section 7703(b)(1) and affirmed the MSPB's decision to dismiss the appeal. Id. at 1248. Until the merits of a mixed case are decided by the MSPB, the court explained, unrelated procedural and threshold matters should be appealed to the Federal Circuit. Id. at 1246-47. Doing so fulfills the congressional goal of making the Federal Circuit the single repository for cases seeking to define the metes and bounds of MSPB jurisdiction, thus "allow[ing] the application of a unified body of case law concerning issues like . . . the jurisdiction of the MSPB itself." Id.; accord Synan v. Merit Sys. Prot. Bd., 765 F.2d 1099, 1102 (Fed. Cir. 1985); see Powell, 158 F.3d at 600 ("the boundaries of the [MSPB]'s jurisdiction should be subject to uniform interpretation in a single forum – the Federal Circuit").

The Fourth Circuit has favorably cited Ballentine. Afifi, 924 F.2d at 63. Other circuits to have addressed the issue have followed Ballentine's lead as well. Powell, 158 F.3d at 597-98 (holding Federal Circuit had exclusive jurisdiction to review the MSPB dismissal of a case for lack of jurisdiction because a

15

voluntary termination is not an appealable action); <u>Sloan v. West</u>, 140 F.3d 1255, 1258-61 (9th Cir. 1998) (holding Federal Circuit has exclusive jurisdiction to review MSPB dismissal of a case for lack of jurisdiction because an employee terminated after reclassification of employment grade did not suffer an appealable action); <u>Wall v. United States</u>, 871 F.2d 1540, 1542 (10th Cir. 1989) (holding Federal Circuit had exclusive jurisdiction to review MSPB dismissal for lack of jurisdiction because voluntary retirement is not an appealable action); <u>see also</u> <u>Rendon v. Potter</u>, No. SA-06-CV-875-XR, 2007 WL 1452932, at *7 (W.D. Tex. May 15, 2007) (holding Federal Circuit has exclusive jurisdiction over matters involving the scope of the MSPB's jurisdiction); <u>Burrell v. U.S. Postal Serv.</u>, 164 F. Supp. 2d 805, 810 (E.D. La. 2001) (same).

DiPaulo argues that the Second Circuit's decision in <u>Downey v. Runyon</u>, 160 F.3d 139 (2d Cir. 1998), supports her argument for district court review. There, the MSPB dismissed Downey's appeal as untimely because it was filed two years late. 160 F.3d at 142. The <u>Downey</u> court held that federal district courts had jurisdiction to review, *de novo*, a mixed-case appeal dismissed by the MSPB on grounds of untimeliness. 160 F.3d at 146; <u>see also</u> <u>Harms v. I.R.S.</u>, 321 F.3d 1001, 1008 (10th Cir. 2003) (declining to extend its decision in <u>Wall</u>, holding that "when the MSPB has jurisdiction over an appeal under § 7702(a)(1) but dismisses the appeal on

16

procedural grounds, the federal district court has jurisdiction to review *de novo* the decision of the MSPB.").

Downey is distinguishable, however, for at least two reasons. First, the plaintiff in Downey was a preference eligible USPS employee who was removed from his position. 160 F.3d at 140. He therefore satisfied the statutory requirements of section 7702(a)(1) and had a valid mixed-case appeal to the MSPB. But for the untimeliness of his filing, his case would have fit section 7703(b)(2)'s exception for mixed-case appeals to the MSPB that are eligible for judicial review by a district court. In contrast, the MSPB found that DiPaulo never had the right to present her case before it, because she failed to show that she met the requirements of a mixed-case appeal under section 7702(a)(1). Second, the question presented to the Second Circuit in Downey was whether the district court's *de novo* review should be barred simply because the plaintiff was late filing his mixed-case appeal, not whether the district court's *de novo* review should be barred because the plaintiff had no mixed-case appeal at all. Section 7702(a)(3) provides that "[a]ny decision of the [MSPB] under paragraph [7702(a)](1) of this subsection shall be a judicially reviewable action" upon the issuance of the MSPB's decision. The reference to section 7702(a)(1) means that in order for a decision to be judicially reviewable it must be a mixed-case appeal within the scope of this section. While the plaintiff in Downey met section

7702(a)(1)'s requirements for a mixed-case appeal, DiPaulo did not. Indeed, in denying Downey's motion for rehearing, the Second Circuit distinguished <u>Ballentine</u>, <u>Sloan</u> and <u>Wall</u> on these very bases, noting that in those cases no plaintiff had a true mixed case and therefore failed to qualify for district court review under sections 7702(a)(2)(A) and 7703(b)(2). 160 F.3d at 146.

This case presents the very scenario Congress envisioned for Federal Circuit review. The MSPB concluded that it lacked jurisdiction over DiPaulo's claim because she was not within the subset of federal employees eligible to appeal a personnel action to the MSPB. Whether the MSPB's interpretation of its jurisdiction was correct should be decided by the Federal Circuit, not one of the nearly 100 federal district courts, so that a uniform rule of MSPB jurisdiction can be crafted. <u>See</u> <u>Afifi</u>, 924 F.2d at 64.

This decision, no doubt, puts DiPaulo in a difficult position. To be sure, an appeal to the Federal Circuit must be filed within 60 days of receipt of notice of the Final Order of the MSPB, 5 U.S.C. § 7703(b)(1), and that time period has expired for DiPaulo. <u>See</u> <u>Oja v. Dep't of the Army</u>, 405 F.3d 1349, 1360 (Fed. Cir. 2005) ("Compliance with the filing deadline of 5 U.S.C. § 7703(b)(1) is a prerequisite to our exercise of jurisdiction"). The EEO's Final Agency Decision clearly informed DiPaulo she had two options: file her case with the district court (under 42 U.S.C. § 2000e-16(c) and 29 U.S.C. § 794a(a)(1)); or appeal the EEO's Final Agency Decision

to the MSPB (under 5 U.S.C. §§ 7701(a) and 7702(a)(1)). (Doc. 8 Ex. A-2.) This direction was likely based on the EEOC's (potentially erroneous) determination that DiPaulo's case was appealable to the MSPB as a mixed case (rather than to the EEOC) because she alleged her resignation was forced by USPS's discriminatory conduct.[12] (Id. Ex. A-2 at 1.) Having chosen to seek MSPB review, "her option to file a civil discrimination action in federal district court was foreclosed." Hooker-Robinson v. Rice, No. 05-321, 2006 U.S. Dist. LEXIS 10788, at *19 (D.D.C. Mar. 1, 2006). By appealing the EEO's Final Agency Decision to the MSPB, DiPaulo submitted review of her claim to the statutory framework conferring exclusive jurisdiction to the Federal Circuit. That she chose this path based on what she now argues was incorrect direction from the EEOC and without a clear appreciation for the requirements of MSPB jurisdiction is both troubling and unfortunate.[13]

---

[12] Although a removal is a personnel action appealable to the MSPB, 5 U.S.C. § 7512(1), the EEOC ALJ appears to have overlooked the more basic question of DiPaulo's eligibility to avail herself of the MSPB process at all, particularly given the fact that her EEO Complaint clearly indicated she was neither a veteran nor a preference-eligible employee. (Doc. 8 Ex. A-2 at 1 (noting she was "no preference" and "non-exempt").)

[13] To say that the appeal process for federal employees is byzantine might be an understatement. The Fourth Circuit has accurately termed the statutory scheme a "mine field for the unwary." Afifi, 924 F.2d at 62. DiPaulo insinuates in her brief that she was misled by the EEO and EEOC into filing her claim with the MSPB, an action which she claims has led to her current predicament. (Doc. 15 at 4.) Unfortunately, DiPaulo never submitted a copy of any order from the EEOC upon which she claims to rely, though reference is made to it in the EEO's Final Agency Decision. (Doc. 8 Ex. A-2 at 1.) The MSPB's

The Federal Circuit is thus the proper forum to review the MSPB's determination that it lacks jurisdiction over DiPaulo's claim. This court has the authority to transfer DiPaulo's appeal to the Federal Circuit pursuant to 28 U.S.C. § 1631. However, because the statutory scheme eschews bifurcated proceedings, Afifi, 924 F.2d at 62-63, and DiPaulo's counsel represented at oral argument that DiPaulo is interested not in the appeal (never having been inclined to seek MSPB review in the first place) but rather in pursuing her discrimination remedies, the court declines to transfer the action to the Federal Circuit and will proceed to address DiPaulo's claims seeking district court review. Thus, USPS's Motion to Dismiss the Amended Complaint to the extent it seeks review of the MSPB's Final Order is GRANTED, without prejudice. Fed. R. Civ. P. 12(b)(1).

---

decision, if correct, suggests that the EEOC ALJ misfired in her denial of an EEOC hearing, but the court declines to evaluate the correctness of that determination. Nevertheless, the EEO's Final Agency Decision's delineation of appeal remedies tracks the statutory remedies for a mixed case. Once the EEO issued its Final Agency Decision, it was up to DiPaulo at that moment to assess whether she in fact complied with the jurisdictional prerequisites of MSPB review before seeking review in that forum in lieu of proceeding to district court, as was her right. As noted infra, by seeking review by the MSPB, DiPaulo selected, and was therefore bound to follow, the statutory framework governing such appeals, which precludes her suit in district court at this time. While DiPaulo's situation is troubling and perhaps beyond the grasp expected of unrepresented claimants, the court declines to determine (at least at this stage) whether DiPaulo was "misled" in any manner.

## C.   District Court Determination of Title VII and Rehabilitation Act Claims

In addition to seeking judicial review of the MSPB decision under section 7703, DiPaulo seeks "legal and equitable relief" for gender discrimination in violation of Title VII, 42 U.S.C. § 2000e-16, and disability discrimination in violation of the Rehabilitation Act, 29 U.S.C. §§ 791 and 794a(a)(1). DiPaulo demands "a trial by jury as to all issues of fact and law," a declaratory judgment, and damages pursuant to 42 U.S.C. § 1981a. (Doc. 6 ¶¶ 1, 20.)

### 1.   5 U.S.C. § 7702

DiPaulo argues that she is entitled to a trial *de novo* on her discrimination claims under 5 U.S.C. § 7702(a)(3)(A), which provides:

> Any decision of the Board under paragraph (1) of this subsection shall be a judicially reviewable action as of –
> > (A) the date of issuance of the decision if the employee or applicant does not file a petition with the Equal Employment Opportunity Commission under subsection (b)(1) of this section. . . .

DiPaulo argues that because she did not seek review by the EEOC, she is free to seek *de novo* review of her discrimination claims in this court. (Doc. 15 at 2-3.) The problem with DiPaulo's argument is that this section, by its reference to paragraph (1) of the subsection, speaks only to decisions of the MSPB in cases "which the employee or applicant may appeal to the Merit Systems

21

Protection Board." 5 U.S.C. § 7702(a)(1)(A). Because the MSPB determined that DiPaulo was not eligible to appeal the USPS EEO's Final Agency Decision to the MSPB, she no longer fits within this section. Her remedy to reverse that determination, as noted above, is limited to Federal Circuit review, even though that court may never reach her discrimination claims.[14] Thus, her ability to seek a trial *de novo* in district court cannot be grounded in section 7702.

### 2. Title VII and Rehabilitation Act

Under Title VII, a federal employee who receives a final agency decision may file a civil action — rather than appeal the final agency decision through the administrative process — within 90 days of receiving notice of the final agency action. 42 U.S.C. § 2000e-16(c); see also 29 C.F.R. § 1614.407(a); Laber v. Harvey, 438 F.3d 404, 416 n.9 (4th Cir. 2006). The remedies, procedures and rights set forth in 42 U.S.C. § 2000e-16, including the application of 42 U.S.C. § 2000e-5(f) through (k) and the 90-day time limitation, apply to DiPaulo's Rehabilitation Act claim as well.[15] 29 U.S.C. § 794a(a)(1); 29 C.F.R. § 1614.407; see Andrews

_____

[14] The statutory scheme permits district court review of mixed cases only where the MSPB has reached the merits of the discrimination claim. 5 U.S.C. § 7703(b)(2); Ballentine, 738 F.2d at 1246-47.

[15] DiPaulo filed this lawsuit on April 3, 2007, 232 days after the USPS EEO issued its Final Agency Decision — clearly outside the 90-day time limitation for bringing an action under either Title VII or the Rehabilitation Act. While DiPaulo complains understandably about being whipsawed between conflicting decisions of the EEOC and MSPB, she does not argue that this court should exercise equitable tolling, and the

22

v. Principi, No. Civ. 1:01CV00910, 2003 WL 1790915, at *2 (M.D.N.C. Apr. 1, 2003).

The USPS EEO entered its Final Agency Decision in DiPaulo's case on August 10, 2006. (Doc. 8 Ex. A-2.) Instead of filing a civil action, DiPaulo appealed that decision to the MSPB in accordance with the instructions in her EEO Final Agency Decision. (Doc. 8 Ex. A-2.) So, the question is whether DiPaulo may proceed with her Title VII and Rehabilitation Act claims in this court, even though she sought review and obtained a decision from the MSPB.

Absent limited exceptions, claimants proceeding under Title VII and the Rehabilitation Act must receive either an agency or EEOC "final action" prior to suing in district court.[16]  42 U.S.C. § 2000e-16(c); 29 U.S.C. § 794a(a)(1); 29 C.F.R. § 1614.407(a); see Laber, 438 F.3d at 416 (federal employees must exhaust administrative remedies before exercising right to sue).  A case is ripe for judicial review "where the agency . . . action giving rise to the controversy is final and not dependent upon future uncertainties or intervening agency rulings."  Franks v. Ross, 313

_____

court declines to consider at this stage whether the conduct of the EEO, EEOC and/or MSPB warrants such a remedy.  Steele v. Brown, 993 F. Supp. 918, 921-22 (M.D.N.C. 1998).

[16]  A claimant may file a civil action after 180 days of filing either an initial charge with the agency EEO or an appeal of an agency EEO's final decision with the EEOC, provided the claimant is aggrieved by the failure to act on the complaint or appeal.  42 U.S.C. § 2000e-16(c); 29 U.S.C. § 794a(a)(1).

F.3d 184, 195 (4th Cir. 2002) (quoting Charter Fed. Sav. Bank. v. Office of Thrift Supervision, 976 F.2d 203, 208 (4th Cir. 1992)). Although DiPaulo obtained the USPS EEO Final Agency Decision on August 10, 2006, her appeal of that decision to the MSPB exposed the EEO's resolution of her personnel action and discrimination claims to the uncertainty of an "intervening agency ruling" by the MSPB. Franks, 313 F.3d at 195; see Charter Fed. Sav. Bank, 976 F.2d at 208 ("there must be an 'administrative decision [that] has been formalized and its effects felt in a concrete way by the challenging parties'") (quoting Pac. Gas & Elec. v. Energy Res. Comm'n, 461 U.S. 190, 200 (1983)); cf. Invention Submission Corp. v. Rogan, 357 F.3d 452, 459 (4th Cir. 2004) (ruling that a final agency action for purposes of the Administrative Procedure Act must be the "consummation of the agency's decision making process . . . [and] must be [an action] by which rights or obligation have been determined, or from which legal consequences will flow") (internal citations omitted). Because DiPaulo elected to appeal the EEO's Final Agency Decision to the MSPB, the formalized administrative decision that binds her (and USPS) is the MSPB's Final Order concluding that it lacked jurisdiction over her claim. Charter Fed. Sav. Bank, 976 F.2d at 208-09. Only the Federal Circuit may review the MSPB's determination.

The EEOC regulations prescribe a remedy precisely for a claimant in DiPaulo's situation, however:

> If a person files a timely appeal with MSPB from the
> agency's processing of a mixed case complaint and the
> MSPB dismisses it for jurisdictional reasons, the agency
> shall reissue a notice under § 1614.108(f) giving the
> individual the right to elect between a hearing before an
> administrative judge and an immediate final decision.[17]

29 C.F.R. § 1614.302(b). Under this regulation, after the MSPB

dismissed DiPaulo's case for lack of jurisdiction, USPS was

required to resume processing of her case as a non-mixed case

pursuant to 29 C.F.R. §§ 1614.108(f) and 1614.302(b).[18]  Taite v.

Nicholson, EEOC Doc. 0120080502, 2008 WL 957781, at *6, 7 (Mar. 28,

2008); see Sypher v. Geren, EEOC Doc. 0320080064, 2008 WL 2484281,

---

[17]    The USPS EEO must comply with the EEOC's regulations
implementing Title VII and the Rehabilitation Act.  42 U.S.C. § 2000e-
16(b); 29 U.S.C. § 794(a)(1); see Reorganization Plan No. 1 of 1978, 43
Fed. Reg. 19807, 19807 (May 9, 1978), reprinted in 5 U.S.C. App. at 423
(2007) (transferring "[a]ll equal opportunity in Federal employment and
related functions" from the Civil Service Commission to the EEOC); Exec.
Order 12,106, 44 Fed. Reg. 1053, 1053 (Jan. 3, 1979).  This regulation
applies to final agency decisions.  Federal Sector Equal Employment
Opportunity, 57 Fed. Reg. 12,634, 12,644 (Apr. 10, 1992).

[18]    The USPS EEO's Final Agency Decision became non-final upon its
appeal to the MSPB.  29 C.F.R. §§ 1614.310(a), 1614.407(a).  The MSPB's
dismissal of DiPaulo's case on jurisdictional grounds (without reaching
the merits) does not alter this conclusion.  As stated in 29 C.F.R. §
1614.302(b), after a person "files a timely appeal with MSPB from the
agency's processing of a mixed case complaint and the MSPB dismisses it
for jurisdictional reasons," the agency is obligated to resume processing
the case as a non-mixed case and "reissue" a notice informing the
claimant of her right to pursue a hearing before the EEOC or obtain an
immediate final action.  This "re-issuance" requirement confirms that
where an "agency's processing" results in a final agency decision (which
may not always occur because mixed cases may be appealed to the MSPB if
the agency fails to act within 120 days of a claimant's filing of the
complaint, 5 U.S.C. § 7702(e)(2)), the claimant, after dismissal by the
MSPB on jurisdictional grounds, has a right to obtain another final
agency decision.  DiPaulo's initial EEO Final Agency Decision resulted
from the agency's processing of her claim as a mixed case, see 5 U.S.C.
§ 7702(a)(2), whereas a final agency decision issued after the MSPB
dismissal would necessarily result from the agency's processing of her
claim as a non-mixed case.

at *1 (June 12, 2008) ("When the MSPB has denied jurisdiction in such matters, the [EEOC] has held that there is little point in continuing to view the matter as a 'mixed case' as defined by 29 C.F.R. § 1614.302(a). Thus, the case will be considered a 'non-mixed' matter and processed accordingly.").

USPS argues that the section 1614.302(b) notice requirement is not applicable to DiPaulo's case because she already obtained the USPS EEO's Final Agency Decision. (Doc. 21 at 3.) To the contrary, both the text of the regulation and DiPaulo's predicament illustrate the precise reason this provision exists. In <u>Garcia v. Johanns</u>, EEOC DOC 0120054291, 2008 WL 281036, at *2 (Jan. 3, 2008), the complainant filed a mixed case complaint with the agency, which issued a final agency decision finding no discrimination and informing him of his appeal rights to the MSPB. <u>Id.</u> In addition to following the agency's instruction to appeal the final agency decision to the MSPB, he appealed it simultaneously to the EEOC. <u>Id.</u> The MSPB denied his case for lack of jurisdiction, and the EEOC found:

> The Commission's regulations provide that when the MSPB has denied jurisdiction in a mixed case appeal, the agency will "reissue notice under § 1614.108(f) giving the individual the right to elect a hearing before an Administrative Judge or an immediate final decision." Therefore, we find that complainant's appeal to the Commission regarding his termination was premature and it is DISMISSED. We will remand the matter of complainant's termination back to the agency in order to provide him the opportunity to elect between a hearing and a final decision.

Id. at *4 (quoting 29 C.F.R. § 1614.302(b)). The same rationale applies here. Just as the EEO's failure to give Garcia proper notice pursuant to 29 C.F.R. § 1614.302(b) rendered his EEOC appeal premature, by analogy the USPS EEO's failure to give DiPaulo her notice renders her appeal to this court premature.

Upon supplemental inquiry by the court, the parties state that the agency failed to give a section 1614.302(b) notice to DiPaulo after the MSPB issued its Final Order. (Doc. 21 ¶ 2-3; Doc. 22 ¶ 1 Exs. A-C.) In so doing, the agency failed to abide by its own regulations. Section 1614.302(b)'s notice requirement is necessary so that DiPaulo has a chance to elect further administrative review in the EEOC as a non-mixed claim or obtain a final order upon which she can seek district court remedies. See 29 U.S.C. § 794a(a)(1); 42 U.S.C. § 2000e-16(c); 29 C.F.R. §§ 1614.401-409. As it stands, the agency's failure to resume processing of DiPaulo's case as a non-mixed case and issue a new final agency decision (from which she could either seek EEOC review or file an action in district court) caused DiPaulo to fail to exhaust her administrative remedies before proceeding in this court. Austin v. Winter, No. 06-1745, 2008 WL 2705667, at *2 (4th Cir. July 11, 2008) ("Federal employees who seek to enforce their rights under Title VII [] must exhaust their available administrative remedies prior to pursuing an action in federal court.") (quoting Brown v. Gen. Serv. Admin., 425 U.S. 820, 832

(1976)).  Therefore, this court cannot hear her Title VII and Rehabilitation Act claims.[19]

The case will therefore be DISMISSED WITHOUT PREJUDICE, so that the USPS EEO may resume processing of her claim in accordance with the governing regulations and DiPaulo may obtain notice under 29 C.F.R. § 1614.302(b) to make an election of remedies.

## III.  CONCLUSION

For the reasons set forth herein, IT IS ORDERED and ADJUDGED that:

1.    USPS's Motion to Dismiss (Doc. 7) for insufficient service of process pursuant to Rule 12(b)(5), Fed. R. Civ. P. is DENIED;

2.    USPS's Motion to Dismiss DiPaulo's appeal of the MSPB's decision (Doc. 7) for lack of jurisdiction is GRANTED, WITHOUT PREJUDICE; and

---

[19]    Whether the failure to exhaust administrative remedies is grounds for a Rule 12(b)(1), Fed. R. Civ. P., dismissal for lack of subject matter jurisdiction, or for a Rule 12(b)(6), Fed. R. Civ. P., dismissal for failure to state a claim is unclear in light of Arbaugh v. Y & H Corp., 546 U.S. 500 (2006), and the absence of a definitive statement from the Fourth Circuit.  See Sloop v. Mem'l Mission Hosp., Inc., 198 F.3d 147, 148 (4th Cir. 1999) (explaining that the exhaustion requirement is "variously referred to as a jurisdictional prerequisite to adjudication in the federal courts, a procedural prerequisite to adjudication in the federal courts, a procedural prerequisite to bring suit, and a requirement that a claimant exhaust administrative remedies"); Branch-Williams v. Nicholson, No. WDQ-06-1327, 2007 WL 4468708 (D. Md. Apr. 2, 2007) (demonstrating that although a majority of the federal circuits have concluded the exhaustion of administrative remedies is not a jurisdictional requirement, the Fourth Circuit has referred to the requirement as both a jurisdictional prerequisite and a procedural prerequisite at different times).

3.   USPS's Motion to Dismiss DiPaulo's Complaint seeking relief under Title VII and the Rehabilitation Act of 1973 (Doc. 7) is GRANTED, WITHOUT PREJUDICE.

Consequently, the action will be DISMISSED, WITHOUT PREJUDICE.

/s/ Thomas D. Schroeder
United States District Judge

July 29, 2008